JUDGE ALONSO
MAGISTRATE JUDGE VALDEZ
FILED
12/16/2021
JF
1:21-CR-00759
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. |
| | ) | **Violation:** Title 15, United States |
| v. | ) | Code, Sections 78j(b) and 78ff(a); |
| | ) | Title 17, Code of Federal Regulations, |
| DANIEL V.T. CATENACCI | ) | Section 240.10b-5 |

The UNITED STATES ATTORNEY charges:

1. At times relevant to this information:

### Background

a. Defendant DANIEL V.T. CATENACCI was a gastrointestinal medical oncologist, an associate professor of medicine, and the director of the gastrointestinal oncology program at a university medical center in Chicago, Illinois. CATENACCI also served as one of the lead physicians and primary field investigators in connection with a global, multi-site clinical trial of an experimental drug for gastric/gastroesophageal cancer sponsored by Company A.

b. Company A was a clinical-stage biotechnology company based in South San Francisco, California. Company A's stock was publicly traded on the NASDAQ, a global electronic exchange for purchasing and trading securities.

### Company A's Compliance/Confidentiality Policies

c. Company A adopted a Trading Compliance Policy to prevent insider trading and to ensure compliance with federal and state securities laws. Pursuant to that Policy, all directors, officers, employees, agents, consultants, and independent contractors of Company A were required to maintain the confidentiality

of non-public information obtained in the course of their service to Company A, and were prohibited from trading on any material non-public information relating to Company A.

  d. Company A entered into certain written agreements with CATENACCI, and the Chicago university where he worked, to engage them to oversee, direct, and conduct a clinical trial of Company A's experimental cancer drug at their Chicago medical center, in connection with Company A's global study. Those written agreements allowed CATENACCI to receive confidential information, such as Company A's clinical results, while simultaneously obligating him to hold such information in strict confidence and to use it solely for purposes of carrying out his contractual obligations.

  e. By contract, CATENACCI owed a fiduciary duty to maintain the confidentiality of any material non-public information that he acquired by virtue of his position with Company A, and not to use any such information as a basis for trading in Company A's stock.

### Company A's Public Announcement

  f. In or about November 2020, Company A made plans to publicly announce that its global Phase 2 clinical trial had shown positive results in treating advanced gastric/gastroesophageal cancer.

  g. Company A planned to announce these positive results after 3:30 p.m. (CST), that is, after the close of trading, on November 10, 2020.

h. On the night of November 9, 2020, the night before the public announcement, Company A's Chief Medical Officer sent an email to CATENACCI, warning him that the results of the Phase 2 clinical trial, and the underlying data, constituted "material non-public information" of Company A; that U.S. securities laws prohibited "you" (CATENACCI) from trading on the basis of such information; and that after Company A issued its press release, a copy of it would be sent to CATENACCI and he would then know what information was and was not being publicly released by Company A.

i. CATENACCI received an abstract (summary) of the Phase 2 clinical trial results in a separate email sent to him that same night by Company A's Senior Director of Clinical Development, who commented that "[w]e are quite excited about the results."

j. The following morning, November 10, 2020, at approximately 8:30 a.m. (CST), CATENACCI joined a video conference with Company A's Senior Director of Clinical Development to review that clinical data and results in more detail.

k. After the close of trading on November 10, 2020, Company A issued its press release announcing the positive results of its Phase 2 clinical trial. In connection with its public announcement, Company A conducted a live audio webcast and conference call.

## CATENACCI's Stock Trades

l.   CATENACCI held an IRA account with a global financial services firm, which enabled him to buy and sell securities of publicly traded companies on the firm's internet-accessible trading platform.

m.   Prior to November 10, 2020, CATENACCI was not a shareholder of Company A.

n.   On November 10, 2020, at approximately 8:42 a.m. (CST), before Company A publicly announced the positive results of the Phase 2 clinical drug trial, CATENACCI became a shareholder of Company A when he began acquiring, through his personal brokerage account, thousands of shares of Company A's stock on the NASDAQ. By about 8:44 a.m., CATENACCI had acquired 8,743 shares of Company A's stock.

o.   On November 11, 2020, the first day of trading after Company A's public announcement, the price of Company A's stock increased by more than 300%. Shortly after the open of trading on the NASDAQ, at about 8:36 a.m. (CST), CATENACCI began selling the stock that he had purchased prior to Company A's public announcement on November 10, 2020. By about 10:10 a.m. (CST) on November 11, 2020, CATENACCI had sold his entire position in Company A stock, thereby generating a significant net profit for himself.

## Securities Fraud by Insider Trading

2.  Beginning on or about November 10, 2020, and continuing until on or about November 11, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DANIEL V.T. CATENACCI,

defendant herein, directly and indirectly, by the use of a means and instrumentality of interstate commerce and of a facility of a national securities exchange, namely, the NASDAQ, knowingly and willfully used and employed, in connection with the purchase and sale of a security registered on a national securities exchange, a manipulative and deceptive device and contrivance, in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing a device, scheme, and artifice to defraud; and (b) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person. More specifically, CATENACCI illegally used inside information to buy and sell 8,743 shares of Company A's stock, and thereby obtained more than $134,000 in illegal profits.

3.  It was part of the scheme that on November 10, 2020, between about 8:42 a.m. and 8:44 a.m., CATENACCI purchased 8,743 shares of Company A's stock at a price of $5.49 per share. CATENACCI knowingly and willfully purchased such stock based on the following material, non-public information then in his possession:

    a.  Company A's Phase 2 clinical drug trial showed positive results in treating advanced gastric/gastroesophageal cancer;

    b.  Company A intended to publicly announce these results; and

  c. Company A planned to make this public announcement after 3:30 p.m. on November 10, 2020.

  4. It was further part of the scheme that CATENACCI purchased Company A's stock with knowledge that:

  a. he was then possessing, misappropriating, and misusing material non-public information that he had obtained solely because he served as one of the lead physicians on Company A's Phase 2 clinical drug trial;

  b. he owed a fiduciary duty not to misuse inside information and to maintain its confidentiality prior to Company A's public announcement; and

  c. he was violating his duty of trust to Company A by trading on material, non-public information for his own personal financial gain.

  5. It was further part of the scheme that on November 11, 2020, after Company A had made its public announcement and the price of its stock had tripled, CATENACCI willfully sold all the shares of stock that he had purchased prior to Company A's public announcement on November 10, 2020. CATENACCI sold this stock in a series of trades between about 8:36 a.m. and 10:10 a.m. on November 11, 2020, at prices ranging from about $17.00 to $23.27 per share, in knowing breach of his fiduciary duty to Company A.

  6. As a result of CATENACCI's insider trading activities, he enjoyed an illegal net profit of approximately $134,142.

## Execution of the Scheme

7. On or about November 10, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DANIEL V.T. CATENACCI,

defendant herein, directly and indirectly, in connection with the purchase of a security registered on a national securities exchange, knowingly and willfully used and caused the use of a means and instrumentality of interstate commerce (the internet) and of a facility of a national securities exchange (the NASDAQ) to electronically purchase 8,743 shares of Company A's stock, at a price of $5.49 per share, based on material, non-public information then in his possession;

In violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

## FORFEITURE ALLEGATION

The UNITED STATES ATTORNEY further alleges:

1. The allegations set forth above are incorporated here for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

2. As a result of his violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5, as alleged above,

DANIEL V.T. CATENACCI,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all right, title, and interest that he may have in any property, real and personal, which constitutes and was derived from proceeds traceable to such violation.

3. The interests of CATENACCI subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), include the sum of $134,142.

4. If any of the forfeitable property described above, as a result of any act or omission by CATENACCI:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c);

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

JASON YONAN
Digitally signed by JASON YONAN
Date: 2021.12.13 08:39:56 -06'00'

--------

Signed by Jason Yonan on behalf of the
UNITED STATES ATTORNEY