UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 21 CR 759 |
| v. | ) | |
| | ) | Judge Jorge L. Alonso |
| DANIEL V.T. CATENACCI | ) | |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S PROPOSED *ALFORD* PLEA**

The UNITED STATES OF AMERICA, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, submits this memorandum in response to defendant DANIEL V.T. CATENACCI's motion for leave to enter a guilty plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). Doc. 13.

### I. Introduction

As summarized in CATENACCI's motion, the facts of this case are largely undisputed.[1] CATENACCI is a former University of Chicago physician accused of insider trading. At the relevant time, CATENACCI was under contract with a certain biotech company, Five Prime Therapeutics, Inc., to advise and participate in a clinical drug trial. Using inside information obtained from Five Prime, CATENACCI unlawfully bought and sold more than 8,000 shares of Five Prime stock.

CATENACCI acknowledges that he unlawfully traded on material, non-public information, but he denies knowing that insider trading was illegal—an essential element of the criminal charge. Despite CATENACCI's alleged innocence, he wishes

---

[1] To the extent that there are additional facts alleged in this memorandum, the government offers such facts as a proffer of what the government's evidence would show at trial.

to enter a so-called "Alford" plea—that is, he wishes to enter a guilty plea while maintaining his innocence. *United States v. Cook*, 668 F.2d 317, 318 n.1 (7th Cir. 1982) ("An *Alford* plea is one in which a defendant maintains his innocence but nevertheless decides to waive his right to a trial and accept sentence in the belief that he would be found guilty anyway.").

The government opposes CATENACCI's request; the Court should decline to accept a guilty plea from CATENACCI unless he acknowledges his guilt of the crime charged in the information.

## II. The Criminal Charge

The information alleges a violation of federal securities laws, namely, 15 U.S.C. §§ 78j(b), 78ff(a), and 17 C.F.R. § 240.10b-5. These laws are violated "when a corporate insider trades in the securities of his corporation on the basis of material, nonpublic information." *United States v. O'Hagan*, 521 U.S. 642, 651-52 (1997). This is the "traditional" or "classical theory" of insider-trading liability (*id*. at 651), which applies "not only to officers, directors, and other permanent insiders of a corporation, but also to attorneys, accountants, consultants [such as CATENACCI], and others who temporarily become fiduciaries of a corporation." *Id*. at 652 (citing *Dirks v. SEC*, 463 U.S. 646, 655 n.14 (1983)); *see also United States v. Kosinski*, 976 F.3d 135, 145 (2d Cir. 2020) ("we view [defendant]'s role as a principal investigator [in a clinical drug trial] to fit squarely within *Dirks's* recognition of 'temporary insiders' who play fiduciary-like roles"); *United States v. Chow*, 993 F.3d 125, 138 (2d Cir. 2021) ("[w]e have characterized individuals who enter into such confidentiality agreements,

2

pursuant to which they are given access to company information that they agree not to disclose, as 'temporary insiders,'…and, when all other elements were proven, we have upheld their convictions for insider trading") (citations omitted).

The offense of insider trading has five elements:

1. The defendant traded the security alleged in the indictment (or information);

2. At the time of the trade, the defendant was in possession of material, non-public information of the security issuer;

3. The defendant was an insider, or otherwise owed a fiduciary duty or other duty to the issuer;

4. The defendant acted knowingly and willfully in connection with the trade; and

5. The defendant used a means or instrumentality of interstate commerce, or a facility of a national securities exchange, in connection with the trade.

15 U.S.C. §§ 78j(b), 78ff(a); 17 C.F.R. §§ 240.10b-5, 240.10b5-1(a). In seeking the Court's permission to enter an *Alford* plea, it appears that CATENACCI is prepared to admit each element of the offense, except the *mens rea*—that he knowingly and willfully violated the law.

"[I]n order to establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 191-92 (1998) (internal quotation marks omitted). The government is prepared to do so in this case.

### III. Discussion

The government does not quarrel with the applicable law as laid out in CATENACCI's thorough, well-written motion. The question of whether a trial court may accept an *Alford* plea is settled. More than fifty years ago, in the *Alford* case, the Supreme Court held that the Constitution does not require a defendant to admit guilt as a prerequisite to a valid guilty plea:

> [W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

400 U.S. at 37. That said, the *Alford* Court noted the boundaries of its holding: "Our holding does not mean that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead." *Id*. at 38 n.11. Federal district judges, *Alford* suggested, always retain at least some measure of discretion to refuse to accept a guilty plea. *Id*.

In a subsequent case interpreting *Alford*, the Seventh Circuit upheld a district court's decision to not accept such a plea (*United States v. Cox*, 923 F.2d 519, 523-26 (7th Cir. 1991)), reiterating that "the [*Alford*] Court expressly left room for the *discretion* of trial courts[.]" *Id*. at 524 (emphasis in original). The Seventh Circuit proceeded to discuss reasons why it may be appropriate for a district judge to reject an *Alford* plea, including the following public policy concern:

> …a conviction affects more than the court and the defendant; the public is involved. However legally sound the *Alford* principle, which of course we do not dispute, the public might well not understand or accept the fact that a

4

> defendant who denied his guilt was nonetheless placed in a position of pleading guilty and going to jail....

*Id.* at 524-25 (quoting *United States v. Bednarski*, 445 F.2d 364, 366 (1st Cir. 1971)).

That public policy concern is reflected today in formal DOJ policy, which generally discourages *Alford* pleas: "[I]t is often preferable to have a jury resolve the factual and legal dispute between the government and the defendant, rather than have government attorneys encourage defendants to plead guilty under circumstances that the public might regard as questionable or unfair." Justice Manual 9-27.440 (comment.)[2]; *see also* Goldstein, *Converging Criminal Justice Systems: Guilty Pleas and the Public Interest*, 49 SMU L.Rev. 567, 573 (1996) ("[a]n equivocal plea of guilty invites suspicion about the processes of justice. And that suspicion, inevitably, does serious damage to the symbolic, deterrent, and correctional functions of criminal law"). The Federal Rules of Criminal Procedure similarly advise trial courts to weigh the public interest along with the views of the parties. *See* Fed. R. Crim P. 11(a)(3) ("[b]efore accepting a plea of nolo contendere, the court must consider the parties' views and the public interest in the effective administration of justice").

There may be times when the interest of justice is better served by a public trial, such as in this case where the defendant does not contest much of the government's allegations and evidence again him. "If that [public] trial turns out to be speedier than most because the defendant does not contest the government's case,

---

[2] https://www.justice.gov/jm/jm-9-27000-principles-federal-prosecution#9-27.440.

the cause of efficiency will be served at the same time as public confidence is enhanced." Goldstein, 49 SMU L.Rev. at 573. If, on the other hand, the Court accepts CATENACCI's proposed *Alford* plea in this case, the public may be left with the erroneous impression that CATENACCI was somehow coerced or induced to plead guilty for reasons other than his factual guilt or, on the other side of the coin, that he was given favorable treatment in the disposition of the case. Here, the risk of public speculation is more than theoretical, for the media already has taken an interest in this case, as CATENACCI notes in his motion (at 13 n.3).

Another reason why the Court should consider rejecting CATENACCI's proposed *Alford* plea is that his denial of intentional wrongdoing is implausible. Five Prime's Chief Medical Officer warned CATENACCI, in writing (email), that (a) Five Prime was providing him with material, non-public information, and (b) trading on such information would be illegal. It is hard to imagine how Five Prime could have given CATENACCI any clearer and more explicit of a warning.

It is also hard to imagine how Five Prime could have given CATENACCI a more timely warning. CATENACCI was given that warning prior to Five Prime's public announcement, and prior to the opening of the stock market on November 10, 2020 (the date of the offense). CATENACCI then began purchasing Five Prime stock within a matter of hours of being warned not to do so.

While CATENACCI does not appear to dispute that he opened that email (he did; he in fact responded to it), CATENACCI maintains that he either did not read it, pay adequate attention to it, or otherwise comprehend that insider trading was

6

illegal. It may be debatable as to whether the illegality of insider trading is within the general public's common understanding—notwithstanding all the popular movies and tv shows that have been made, and all the books and articles that have been written, about high-profile executives, financiers, celebrities, and professional athletes caught up in insider trading over the years—but the clarity of the warning sent to CATENACCI in this case is not subject to reasonable debate. The subject line of the email sent to CATENACCI contained the notation "SEC trading regulations." Upon opening that email, CATENACCI would have immediately noticed that it involved a legal matter, as it was addressed: "Dear Dan: The notice from legal counsel." The body of the email proceeded to discuss the prohibition against trading on "material non-public information," as imposed by "United States securities laws," and that these laws were specifically applicable to "you" (CATENACCI).

Moreover, every contract that CATENACCI signed with Five Prime, including a Clinical Advisor Services Agreement, a Clinical Trial Agreement, Clinical Advisory Board Services Agreements (two), and Speaker Agreements (two), contained provisions setting forth his obligations with regard to protecting Five Prime's clinical data and other confidential information. CATENACCI's Clinical Trial Agreement additionally contained a clause entitled "Trading in Securities of [Five Prime]," which should have put CATENACCI on notice (as early as 2018, when he signed that contract) that insider trading was not permissible. Of course, CATENACCI maintains that he did not read that contract either.

7

CATENACCI's after-the-fact rationalization as to why he traded on inside information strains credulity because he is not an unsophisticated lay person. Like his peers at Five Prime and the University of Chicago, CATENACCI is well-educated and well-experienced in a field where attention to detail and precision are indispensable qualities.

All things considered, it would be well within the bounds of this Court's discretion to deny CATENACCI's motion for the entry of an *Alford* plea. *Cf. United States v. O'Brien*, 601 F.2d 1067, 1070 (9th Cir. 1979) ("appellant repeatedly denied that he intended to defraud the government. In these circumstances the court did not abuse its discretion in rejecting the guilty plea"); *United States v. Gomez-Gomez*, 822 F.2d 1008, 1011 (11th Cir. 1987) ("when a defendant casts doubts upon the validity of his guilty plea by protesting his innocence or by making exculpatory statements, the court may resolve such doubts against the plea").

Perhaps CATENACCI has now been specifically deterred, as he suggests in his motion. But general deterrence also needs to be given consideration. *See* 18 U.S.C. § 3553(a)(2)(B) (courts shall consider the need for any sentence "to afford adequate deterrence to criminal conduct"); *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("[a]s the legislative history of the adoption of § 3553 demonstrates, Congress viewed deterrence as 'particularly important in the area of white collar crime'") (quoting S. Rep. No. 98-225, at 76 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3259). Medical experts and consultants such as CATENACCI are often, and necessarily, given access to significant pieces of scientific data and inside information

8

in connection with clinical research and experimental drug studies. Unexpected good news involving small biotech companies can move stock prices rapidly and significantly, which provides asymmetrical trading opportunities for medical insiders looking to take advantage of the system for personal gain.

Allowing a defendant to technically plead "guilty" in court, while maintaining innocence to the public—under the facts and circumstances of this case—could set a bad precedent by inviting future white-collar defendants to follow suit in the hopes of minimizing the collateral consequences normally attendant to a full-throated guilty plea.

## IV.  Conclusion

For all the reasons set forth above, the government respectfully requests that the Court deny defendant DANIEL V.T. CATENACCI's motion to enter an *Alford* plea.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: */s/Brian R. Havey*
BRIAN R. HAVEY
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 469-6305
brian.havey@usdoj.gov