UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 1:21-CR-00759 |
| v. | HON. JORGE L. ALONSO |
| DANIEL V.T. CATENACCI | |

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR LEAVE
TO ENTER GUILTY PLEA PURSUANT TO *NORTH CAROLINA V. ALFORD***

In his Motion for Leave to Enter a Guilty Plea Pursuant to *North Carolina v. Alford* (Dkt. 13, the "Motion" or "Mot."), Defendant Daniel V.T. Catenacci ("Dr. Catenacci") demonstrated that district courts have broad discretion to accept a so-called *Alford* plea and that courts within the Seventh Circuit typically exercise that discretion by considering whether (1) the defendant has intelligently decided to seek such a plea and (2) there is a strong factual basis for the plea. *See* Mot. at 9-10. Dr. Catenacci further demonstrated that both of these elements are present here: he has decided to seek an *Alford* plea after long consultation with his counsel and based in part on the strength of the government's evidence, despite maintaining that he did not act with the requisite *mens rea* and is therefore innocent of the charges. *See id.* at 10-12.

The Government's Response to Defendant's Proposed *Alford* Plea (Dkt. 15, the "Response" or "Resp.") shows how little there is in dispute to restrain the Court from exercising its discretion to accept Dr. Catenacci's *Alford* plea. Most notably, the Government does not dispute that the above two elements are satisfied in this case. Both sides largely agree on the factual basis. Both sides agree that the Court can accept an *Alford* plea. Both sides agree that it is a matter of the Court's discretion. And both sides agree on the ultimate goals of prosecution and sentencing. The parties' cooperative handling of the case to date has left little on the table for debate. For the reasons discussed below, the government's limited arguments in opposition to Dr. Catenacci's

proposed plea—that Dr. Catenacci's professed mental state at the time he traded is purportedly "implausible," that the public's confidence in the criminal justice system would be undermined by the acceptance of Dr. Catenacci's proposed *Alford* plea, and that general deterrence would not be achieved here through a felony conviction—should be rejected.

I. **Courts Do Not Evaluate the "Plausibility" of the Defendant's Claim to Innocence in Deciding Whether to Accept an *Alford* Plea.**

While the Government argues that the Court should reject Dr. Catenacci's proposed *Alford* plea because his denial of intentional wrongdoing is, according to the Government, "implausible," they do not cite a single case to support this argument. Resp. at 6-7. There is no requirement that a defendant's protestation of innocence be "plausible" in order for an *Alford* plea to be accepted. Such a rule would require the court to prejudge the defendant's positions, before trial, without the benefit of testimony, and in violation of the defendant's constitutional rights (including the right to due process and the right to a jury trial under the Sixth Amendment). It also would defeat the purpose of an *Alford* plea in that it would effectively require the defendant to prove his innocence in order to enter a guilty plea.

In fact, the only requirements that the Seventh Circuit has recognized for an *Alford* plea are (1) that there is a strong factual basis for the plea, and (2) that the defendant desires to proceed with the plea "with an understanding of the charge and the consequences of his plea and with the advice of competent counsel." *United States v. Davis*, 516 F.2d 574, 578 (7th Cir. 1975). Indeed, even in a case in which the defendant denied the *entire factual basis* of the charges against him and protested his innocence, the Seventh Circuit nonetheless observed that the trial court "would have been within its discretion to accept [the defendant's *Alford*] plea." *United States v. Cox*, 923 F.2d 519, 525 (7th Cir. 1991).

In this case, the Government does not deny that both of the elements identified in *Davis* are satisfied here. The parties obviously disagree as to Dr. Catenacci's mental state at the time he traded.[1] But that does not bear on Dr. Catenacci's Motion. What matters is the strong factual basis for the proposed plea and Dr. Catenacci's informed desire to enter it.

II.  **Dr. Catenacci's Proposed *Alford* Plea is Not Contrary to the Public Interest.**

The Government next argues that the Court should exercise its discretion to reject Dr. Catenacci's *Alford* plea because the plea purportedly will rouse public policy concerns that undermine the functions of criminal law. Specifically, the Government argues that "the public may be left with the erroneous impression that [Dr. Catenacci] was somehow coerced or induced to plead guilty for reasons other than his factual guilt or, on the other side of the coin, that he was given favorable treatment in the disposition of the case." Resp. at 6. There may well be cases where these concerns present a risk, but this is not one of them.

First, this case is nothing like the case discussed in the Government's Response, *United States v. Cox*. *See* Resp. at 4-5. As noted above, the defendant in *Cox* sought permission to enter an *Alford* plea while denying the entire factual basis of the charges against him—that is, he denied that he participated in the alleged sale of cocaine to an undercover officer. *Cox*, 923 F.2d at 523. It was not a situation, like here, where the defendant acknowledged all of the objective facts of his conduct and merely denied that he acted with the requisite mental state. Instead, the defendant in *Cox* proposed pleading guilty to a crime that he claimed he did not participate in (selling cocaine to an undercover officer) as punishment for committing another, uncharged crime (distributing

---

[1] From Dr. Catenacci's perspective, the documents cited by the Government equally support his true state of mind. Specifically, he *never* would have traded if he had read the entire warning email that he received just hours before he purchased Five Prime stock. He believes no rational person would have done so, either. But because he did not read the entire email, he did not appreciate—at that time—that his trading could give rise to a violation of the federal securities laws.

cocaine to his girlfriend). *Id*. Here, there is no similar "danger signal" that Dr. Catenacci is "pleading to one crime in order to assuage his guilt for a different, uncharged crime." *Id*. at 525. Thus, the public policy concerns highlighted in *Cox* are not persuasive here.

Second, there is nothing "equivocal" about the proposed plea in this case. Resp. at 5 (quoting Goldstein *Converging Criminal Justice Systems: Guilty Pleas and the Public Interest*, 49 SMU L.Rev. 567, 573 (1996)). Dr. Catenacci will admit that he engaged in the conduct set out in the Information. He will further admit that, in hindsight, he should have known it was wrong. He will even admit that his conduct *was* wrong—and that he deeply regrets it. To be sure, he will state definitively that he did not know that he was violating securities laws when he acted. But he will also acknowledge that the undisputed facts support proof beyond a reasonable doubt that he knew his conduct was illegal. There is no equivocation.

Third, while the Government suggests that a jury trial in this case will enhance public confidence in the criminal justice system, Resp. at 5-6, they do not point to anything showing that public confidence will be undermined by the Court's entry of an *Alford* plea. As noted above, Dr. Catenacci will admit all the elements of the crime except that he knew his conduct was unlawful and he will acknowledge that his conduct was wrong. The criminal justice system will have achieved its goals and done so efficiently. Indeed, the alternative – a trial that erodes the Court's and the Government's resources to prove a crime for which the defendant is prepared to be punished – is far more likely to erode public confidence in the criminal justice system. While the Government suggests that a jury trial in this case would be "efficient," Resp. at 5-6, even an efficient jury trial will exact a burden on the Court, the Government, and the public. Absent evidence or logic to support the Government's argument, the Court should exercise its discretion to accept Dr. Catenacci's proposed plea, as there is nothing to suggest that public confidence in

the criminal justice system would be undermined by a voluntary plea that is based on a sound factual basis and the swift imposition of punishment.

Finally, in view of the full circumstances surrounding Dr. Catenacci's proposed plea, Dr. Catenacci submits that there is no basis for the public to believe that he was coerced or induced to enter a plea in this case. Dr. Catenacci has explained in detail his thought process surrounding the disposition of this case, and has done so in a publicly filed, stand-alone motion (as opposed to in response to questions in a broader hearing)—a motion that was covered extensively in the media.[2] Among other things, Dr. Catenacci explained that proceeding via an *Alford* plea would allow him to more promptly move toward sentencing and satisfying any penalty this Court chooses to impose, "all the while sparing his young family the stress and difficulties of a trial that will likely gather significant media attention and where the outcome appears to be all but assured." Mot. at 13. The Government's opposition to the proposed plea has also been clearly stated in a well-written, public brief. And the media has reported on that opposition as well.[3] In this case, perhaps more than any other, there is little risk of public confusion. Dr. Catenacci's proposed plea is not contrary to the public interest.

### III. Dr. Catenacci's Proposed Plea Will Further the Interests of General Deterrence.

The Government concedes that specific deterrence will be accomplished in this case, but posits that general deterrence may be left wanting by the proposed *Alford* plea. Resp. at 8-9. Dr. Catenacci respectfully disagrees.

---

[2] *See, e.g.*, Bonnie Eslinger, *Ex-UChicago Prof Seeks Alford Plea Over Insider Trades*, Law360 (Feb. 3, 2022, 8:55 PM), https://www.law360.com/articles/1461824/ex-uchicago-prof-seeks-alford-plea-over-insider-trades.

[3] Bonnie Eslinger, *Feds Fight Alford Plea For Ex-Prof Accused Of Insider Trading*, Law360 (Feb. 8, 2022, 10:01 PM), https://www.law360.com/articles/1463333/feds-fight-alford-plea-for-ex-prof-accused-of-insider-trading.

If the Court accepts Dr. Catenacci's *Alford* plea, it will be entered on the record as a guilty plea. The general public will see that Dr. Catenacci has been convicted of a felony. He has also had a judgment entered against him in the SEC matter enjoining him from future violations of the federal securities laws. He has lost his prestigious job as a professor, oncologist, and cancer treatment researcher. His medical license is in jeopardy. He cannot teach and soon may not be able to practice medicine. And his life and the lives of his family members have been and will continue to be irreparably harmed by the consequences of his actions. Dr. Catenacci will be a poster child for the lesson that the consequences of insider trading are greater than the benefits.

That Dr. Catenacci denies willfulness but admits that a jury would find willfulness will not change the public's view of this matter. At the end of the day, Dr. Catenacci will still suffer all of the collateral consequences of a full-throated guilty plea. Thus, general deterrence will be equally served by the *Alford* plea.

## CONCLUSION

In conclusion, Dr. Catenacci respectfully requests that the Court exercise its discretion to allow him to enter the proposed *Alford* plea, where the plea will be based on a sound factual basis and will promote justice and the economy of resources.

Dated: February 23, 2022      /s/ Ronald S. Safer
Ronald S. Safer
Jacob L. Kahn
Georgia N. Alexakis
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700

*Attorneys for Defendant Daniel V.T. Catenacci*