

FILED
4/11/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 21 CR 759 |
| v. | |
| DANIEL V.T. CATENACCI | Judge Jorge L. Alonso |

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant DANIEL V.T. CATENACCI, and his attorneys, RONALD S. SAFER, JACOB L. KAHN, and GEORGIA N. ALEXAKIS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.   The parties to this Plea Agreement have agreed upon the following:

### Charge in this Case

2.    The superseding information in this case charges defendant with securities fraud, in violation of Title 18, United States Code, Section 1348(1).

3.    Defendant has read the charge against him contained in the superseding information, and that charge has been fully explained to him by his attorneys.

4.    Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant Is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the superseding information, which charges him with securities fraud, in

violation of Title 18, United States Code, Section 1348(1). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charge contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the money described elsewhere in this Plea Agreement:

## Background

Defendant was a gastrointestinal medical oncologist, an associate professor of medicine, and the director of the gastrointestinal oncology program at a university medical center in Chicago, Illinois. Defendant also served as one of the lead physicians and primary field investigators in connection with a global, multi-site clinical trial of an experimental drug for gastric/gastroesophageal cancer sponsored by Company A.

Company A was a clinical-stage biotechnology company based in South San Francisco, California. Company A's stock was publicly traded on the NASDAQ, a global electronic exchange for purchasing and trading securities.

Company A entered into certain written agreements with defendant, and the Chicago university where he worked, to engage them to oversee, direct, and conduct a clinical trial of Company A's experimental cancer drug at their Chicago medical center, in connection with Company A's global study. Those written agreements

2

allowed defendant to receive confidential information, such as Company A's clinical results, while simultaneously obligating him to hold such information in strict confidence and to use it solely for purposes of carrying out his contractual obligations.

By contract, defendant owed a fiduciary duty to maintain the confidentiality of any material non-public information that he acquired by virtue of his position with Company A, and not to use any such information as a basis for trading in Company A's stock.

### Company A's Public Announcement

In or about November 2020, Company A made plans to publicly announce that its global Phase 2 clinical trial had shown positive results in treating advanced gastric/gastroesophageal cancer. Company A planned to announce these positive results after 3:30 p.m. (CST), that is, after the close of trading, on November 10, 2020.

On the night of November 9, 2020, the night before the public announcement, Company A's Chief Medical Officer sent an email to defendant, warning him that the results of the Phase 2 clinical trial, and the underlying data, constituted "material non-public information" of Company A; that U.S. securities laws prohibited "you" (defendant) from trading on the basis of such information; and that after Company A issued its press release, a copy of it would be sent to defendant and he would then know what information was and was not being publicly released by Company A.

Defendant received an abstract (summary) of the Phase 2 clinical trial results in a separate email sent to him that same night by Company A's Senior Director of Clinical Development, who commented that "[w]e are quite excited about the results."

The following morning, November 10, 2020, at approximately 8:30 a.m. (CST), defendant joined a video conference with Company A's Senior Director of Clinical Development to review that clinical data and results in more detail.

After the close of trading on November 10, 2020, Company A issued its press release announcing the positive results of its Phase 2 clinical trial. In connection with its public announcement, Company A conducted a live audio webcast and conference call.

### Defendant's Stock Trades

Defendant held an IRA account with a global financial services firm, which enabled him to buy and sell securities of publicly traded companies on the firm's internet-accessible trading platform.

Prior to November 10, 2020, defendant was not a shareholder of Company A. On November 10, 2020, at approximately 8:42 a.m. (CST), before Company A publicly announced the positive results of the Phase 2 clinical drug trial, defendant became a shareholder of Company A when he began acquiring, through his personal brokerage account, thousands of shares of Company A's stock on the NASDAQ. By about 8:44 a.m., defendant had acquired 8,743 shares of Company A's stock.

4

On November 11, 2020, the first day of trading after Company A's public announcement, the price of Company A's stock increased by more than 300%. Shortly after the open of trading on the NASDAQ, at about 8:36 a.m. (CST), defendant began selling the stock that he had purchased prior to Company A's public announcement on November 10, 2020. By about 10:10 a.m. (CST) on November 11, 2020, defendant had sold his entire position in Company A stock, thereby generating a significant net profit for himself.

### Securities Fraud by Insider Trading

Beginning on or about November 10, 2020, and continuing until on or about November 11, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant knowingly devised, intended to devise, and participated in a scheme to defraud persons in connection with a security of an issuer, namely, Company A, with a class of securities registered under section 12 of the Securities Exchange Act of 1934 and that was required to file reports under section 15(d) of the Securities Exchange Act of 1934, which scheme is further described below.

On November 10, 2020, between about 8:42 a.m. and 8:44 a.m., defendant purchased 8,743 shares of Company A's stock at a price of $5.49 per share. Defendant knowingly purchased such stock based on the following material, non-public information then in his possession:

a. Company A's Phase 2 clinical drug trial showed positive results in treating advanced gastric/gastroesophageal cancer;

5

      b.      Company A intended to publicly announce these results; and

      c.      Company A planned to make this public announcement after 3:30 p.m. on November 10, 2020.

Defendant purchased Company A's stock with knowledge that:

      a.      he was then possessing, misappropriating, and misusing material non-public information that he had obtained solely because he served as one of the lead physicians on Company A's Phase 2 clinical drug trial;

      b.      he owed a fiduciary duty not to misuse inside information and to maintain its confidentiality prior to Company A's public announcement; and

      c.      he was violating his duty of trust to Company A by trading on material, non-public information for his own personal financial gain.

On November 11, 2020, after Company A had made its public announcement and the price of its stock had tripled, defendant knowingly sold all the shares of stock that he had purchased prior to Company A's public announcement on November 10, 2020. Defendant sold this stock in a series of trades between about 8:36 a.m. and 10:10 a.m. on November 11, 2020, at prices ranging from about $17.00 to $23.27 per share, in knowing breach of his fiduciary duty to Company A.

For the purpose of executing and attempting to execute the scheme described above, on or about November 10, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant knowingly purchased 8,743 shares of

Company A's stock, at a price of $5.49 per share, based on material, non-public information.

As a result of defendant's insider trading activities, he enjoyed an illegal net profit of approximately $134,142.

## Maximum Statutory Penalties

7.    Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.    A maximum term of imprisonment of 25 years and a maximum fine of $250,000. Defendant further understands that the Court also may impose a term of supervised release of not more than five years.

b.    Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pleaded guilty, in addition to any other penalty imposed by the Court.

## Sentencing Guideline Calculations

8.    Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guideline range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal

7

conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines.**  The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely, the November 2021 Guidelines Manual.

b.    **Offense Level Calculations.**

i.    Pursuant to Guideline § 2B1.1(a)(1), the base offense level is 7.

ii.    The base offense level should be increased by 8 levels pursuant to Guideline § 2B1.1(b)(1)(E) because the gain resulting from the offense (approximately $134,142) exceeded $95,000, but not $150,000.

iii.    It is the government's position that the offense level should be increased by additional 2 levels pursuant to Guideline § 3B1.3 because defendant

occupied and abused a position of private trust in a manner that significantly facilitated the commission of the offense. Defendant reserves the right to challenge the applicability of this Guideline enhancement.

   iv. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

   v. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

   c. **Criminal History Category.** Based on the facts now known to the government, defendant's criminal history points equal 0 and his criminal history category is I.

9

    d.    **Anticipated Advisory Sentencing Guideline Range.** If the Court adopts the government's calculations as set forth above, the anticipated offense level total will be 14, which, when combined with the anticipated criminal history category of I, will result in an anticipated advisory Sentencing Guideline range of 15-21 months of imprisonment, in addition to any term of supervised release and fine that the Court may impose. If, on the other hand, the Court finds that the 2-level enhancement for abuse-of-trust is inapplicable, then the anticipated offense level total will be 13, which, when combined with the anticipated criminal history category of I, will result in an anticipated advisory Sentencing Guideline range of 12-18 months of imprisonment, in addition to any term of supervised release and fine that the Court may impose.

    e.    Defendant and his attorneys and the government acknowledge that the above Sentencing Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Sentencing Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculations. Accordingly, the validity of this Plea Agreement is not contingent upon the Probation Office's or the Court's concurrence with the above

Guideline calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10.     Both parties expressly acknowledge that this Plea Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines.  The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11.     Each party is free to recommend whatever sentence it deems appropriate.

12.     It is understood by the parties that the Court is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above.  Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14.     Defendant agrees that the United States may enforce collection of any fine imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

15.     After sentence has been imposed on the charge to which defendant pleads guilty as agreed herein, the government will move to dismiss the original information.

### Forfeiture

16.     Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds he obtained, directly or indirectly, as a result of the offense.

17.     Defendant agrees to the entry of a personal money judgment in the amount of $134,142, representing the total approximate amount of proceeds traceable to the offense.  Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment that he will be ordered to pay.

18.     Defendant admits that because the directly forfeitable property is no longer available for forfeiture as described in Title 21, United States Code, Section

853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the personal money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2).

19. Defendant understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

20. Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel. Defendant further agrees not to challenge or seek review of the civil or administrative forfeiture of any property identified in this agreement subject to forfeiture, and will not assist any third party with regard to such challenge or review.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

21. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 21 CR 759.

13

22. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

23. Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant.

## Waiver of Rights

24. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Plea Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

b.  **Trial rights.**  Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

i.  The trial could be either a jury trial or a trial by the judge sitting without a jury.  However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.  If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random.  Defendant and his attorneys would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.  If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.  The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the

judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorneys would be able to cross-examine them.

        vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

        vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

        c.      **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

    25.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights

16

specifically preserved above. Defendant's attorneys have explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

26.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Presentence Report and at sentencing shall fully apprise the Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

27.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Office. Defendant understands that providing false or incomplete information, or refusing to provide his financial information, may be used as a basis for denial of a reduction for acceptance-of-responsibility pursuant to Guideline § 3E1.1 and for enhancement of his sentence for obstruction of justice pursuant to Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of court.

28.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which

defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the tax returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

29.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

30.     Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i).     In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn over those materials to the Civil Division of the United States Attorney's Office, or an

appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant. Nothing in this paragraph or the preceding paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

31.    Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to an offense that is an "aggravated felony" as that term is defined in Title 8, United States Code, Section 1101(a)(43), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorneys and the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

## Conclusion

32.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

33.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Plea Agreement, or defendant breaches any of its terms and the government elects to void the Plea Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

34.     Should the Court refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound to it.

35.   Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement, to cause defendant to plead guilty.

36.   Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorneys.   Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Plea Agreement.

AGREED THIS DATE: ___4/8/2022_____

JOHN R. LAUSCH, JR.
United States Attorney

DANIEL V.T. CATENACCI
Defendant

BRIAN R. HAVEY
Assistant United States Attorney

RONALD S. SAFER
Attorney for Defendant

JACOB L. KAHN
Attorney for Defendant

GEORGIA N. ALEXAKIS
Attorney for Defendant